Estate of Joseph Fleming, deceased.    Appeal of R. F. Shannon.

*Decedents' estates—Contract—Purchase of partnership interest.*

Testator gave to his son the right to purchase testator's interest in a partnership in a drug business. In taking the business the son agreed "to assume the payment of all bills and accounts payable of said firm." He also agreed to use all reasonable endeavor to collect all the outstanding accounts receivable of said firm, and for those which he was unable to collect within five years he was to be allowed credit on final settlement. Amongst the bills payable was a draft drawn by a firm, the members of which were relatives of the testator, and accepted by the testator's firm for the accommodation of the drawers. The son knew of the existence of this obligation when he accepted the interest of his father at the appraisement. Amongst the bills receivable was a judgment note to the order of the firm, given by a former employee, to secure an accommodation note for a like sum which the firm had indorsed, and which had been discounted. At the time of testator's death the accommodation note was an outstanding liability of the partnership. After testator's death the son renewed the indorsement in the firm name. The maker failed and the son had to pay it. The judgment was also uncollectible. *Held,* (1) that the son was bound to pay the draft under his agreement to pay all bills of the partnership; (2) that the son was also bound to pay the note indorsed for the employee, and was not entitled to credit in his final account for the judgment note.

Argued Oct. 28, 1897. Appeal, No. 105, Oct. T., 1897, by R. F. Shannon, from decree of O. C. Allegheny Co., Nov. T., 1896, No. 55, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to adjudication. Before HAWKINS, P. J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*William Yost,* for appellant, cited Bispham v. Price, 15 Howard, 162; Steadwell v. Morris, 61 Ga. 102; Quinlan v. Keiser, 66 Mo. 603; Geddes's App., 80 Pa. 462; Rockafellow v. Baker, 41 Pa. 321.

*W. B. Rodgers,* with him *Henry R. Ewing,* for appellee.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

This appeal, though touching another matter, is from the same decree as that from which George S. Fleming appealed, and in which opinion is this day handed down, ante, p. 80. It will be noticed, in the statement of facts in Fleming's Appeal, that the son George accepted the bequest at the appraisement made by directions of his father's will, of his, the father's interest in the drug business of the partnership of Fleming & Son. In the written acceptance, George S., the son, agrees as follows : " I agree to take the interest of Joseph Fleming at the time of his death in the firm of Joseph Fleming & Son, including store, fixtures, book accounts and bills receivable, and to assume the payment of all bills and accounts payable of said firm, at the valuation fixed thereon . . . . by the appraisers and to pay for the same, the sum of $48,992.05. . . . This agreement being made upon condition that I am to use all reasonable endeavor to collect all the outstanding bills and accounts receivable of said firm, and those which I am unable within five years to collect, I am to be allowed a credit for on final settlement."

In adjudicating the account of George S. Fleming, as executor, the court allowed him credit for a draft, of which the following is a copy :

$1,485.                          PITTSBURG, April 9th, 1890.

"Six months after date, pay to the order of ourselves, fourteen hundred and eighty-five dollars, value received, and place to the account of                          FLEMING BROS."

" To JOSEPH FLEMING & SON,
      " PITTSBURG, PA.
" Accepted, JOSEPH FLEMING & SON.
" Endorsed, FLEMING BROS."

On the face of this paper it was a debt of Fleming & Son, for it was a bill drawn on and accepted by them. George S., in acceptance of his father's interest in the business of Fleming & Son at the appraisement, says : "I agree to assume the payment of all bills and accounts payable of said firm." Fleming Bros. were near relatives of Fleming & Son ; they were also in the drug business, became embarrassed, and requested of Fleming & Son, an acceptance of this draft, as an accommodation, for the reason that it would be more readily discounted in bank

if it bore the appearance of money payable to, and not money payable by them. When the draft became due Fleming Bros. had failed ; in the meantime Joseph Fleming, of Fleming & Son, had died, and the surviving partner, George S., paid the draft. The acceptance of Joseph Fleming & Son on the face of the bill was written by George S. He admits that he knew of the existence of this obligation at the time he accepted the interest of his father at the appraisement. He says he then hoped Fleming Bros. would take care of it. The learned auditing judge was of opinion that this draft does not come within the spirit of the agreement of George S. to assume the payment of "all bills and accounts of Joseph Fleming & Son." We do not see why. True it was no part of the drug business to become accommodation acceptors for financially weak relatives, but they could do this sort of business if they chose ; the father suggested the acceptance, the son protested, but finally assented and wrote it ; then, afterwards agreed in express terms in writing to assume payment of all bills of Joseph Fleming & Son, as part of the payment of the value of the father's interest in the drug business, when he knew this accepted bill was outstanding and unpaid. While it may not have been within the spirit of the copartnership agreement in the drug business, it was, under the circumstances, certainly within both the letter and spirit of George S. Fleming's agreement to pay all bills of the partnership. We think the court below erred in not sustaining the exception to allowance of this amount to the executor, and appellant's first assignment of error is sustained.

The auditing judge also allowed credit to the executor for a $400 judgment note, as follows :

"$400.                                    October 8, 1889.

"One day after date I promise to pay to the order of Joseph Fleming & Son, four hundred dollars, without defalcation, value received, with interest. (Then follows a warrant of attorney under seal to confess judgment).

"(Signed)                        WILLIS WHITLING."

To this the appellant also excepted and the court below dismissed the exception. In his adjudication the learned auditing judge says : "In the valuation of the business, George S. Fleming was charged with certain bad accounts, with right to credit

for certain specified items in case they should prove uncollectible. This note was accidently omitted. Had it been good, Mr. Fleming should have been charged; being bad, and having been paid by him, he should have credit."

By the report, these reasons given, certainly, do not justify the ruling. Whether the note was omitted by accident, or from other cause from the appraisement, is immaterial; it was omitted, and Fleming was not charged with it as an asset; as he was not charged, clearly he was entitled to no credit for having paid; but as a business transaction, it is incomprehensible how he could have paid a judgment note of Whitling, obligor, and Fleming & Son, obligees; those to whom a note is payable do not pay it; they may cancel or destroy it, thus relieving the obligor from payment, but do not pay themselves what by writing is owing to themselves. But the note was still in possession of the obligees, not canceled, and by one of them laid before the auditor as an existing obligation. While the reasons for the allowance are wholly unsatisfactory, the question still remains. Was the allowance warranted for any other good reasons? To answer this involves an examination of the evidence, and an ascertainment of the origin of the note. It appears from the testimony of George S. Fleming that there had been in the service of the partnership, a young man, Willis Whitling, who desired to set up in the retail drug business for himself, and if he did so, he would probably become a customer of Fleming & Son, who were wholesalers; he was without means, so Fleming & Son, as accommodation indorsers, indorsed his note for $400, on which he procured a discount in bank; at the time of the indorsement, he delivered to the indorsers as collateral security this judgment note for $400. Whitling started in business in a small way, and bought goods on open account from time to time of Fleming & Son, but in less than a year failed; in the meantime the discounted promissory note fell due, and was frequently renewed with the same indorsers; before it fell due the last time, on October 20, 1890, Whitling's failure occurred; then, George S. Fleming paid it. On May 27, 1890, when the appraisement of the father's interest in the firm was made, this liability as accommodation indorsers on a $400 note in bank was an outstanding liability of the partnership; the judgment given as collateral security, in possession of the partnership, was

under the circumstances a partnership asset.  The appraisers of
the father's interest in the partnership made out two lists, one
of assets, the other of liabilities.   The judgment note here pre-
sented is not in the list of assets, and of course George S. Fleming
is not charged with it.   Whether the outstanding accommoda-
tion indorsement is in the list of liabilities as it ought to be, we
do not know, for neither party has printed this list in the paper-
books, nor do they even state whether this liability appeared
there ; the list was however, before the auditing judge as part
of the evidence.   The probabilities are that it appeared there,
because it was known to exist by the surviving partner ; the
partnership books showed a memorandum of it ; he presented
to the appraisers the books and papers of the partnership, show-
ing assets and liabilities.   It was his interest to present out-
standing indorsements, for then this would be included in the
list of liabilities and be deducted from the gross assets, thus re-
ducing the appraisement by that amount.   He then knew as
surviving partner that he would probably have to pay this obli-
gation for the firm.   If it was in the list of liabilities, George S.
Fleming has been already paid ; if not in that list, the indorse-
ment was a partnership liability, for he admits he knew and took
part in the transaction at the date the judgment note was given
as collateral, and that he renewed the indorsement in the firm
name after his father's death.   It then became a debt owing by
the firm, the same as the accommodation acceptance for Flem-
ing Bros. heretofore referred to, which by the written acceptance
of the bequest, dated June 21, 1890, he agreed to pay.   It can-
not be allowed as a credit in the executor's account, on the rea-
son given by the learned auditing judge ; it should not be allowed
for the reasons now given ; therefore, appellant's first and sec-
ond assignments of error are sustained, and the decree so far as
it allows these credits is reversed.   In the view we have taken
the other assignments of error become unimportant.   Let the
account be restated in accordance with this opinion.   It is fur-
ther directed that costs be paid by appellee.